B. John Pendleton, Jr.
DLA Piper LLP (US)
300 Campus Drive, Suite 100
Florham Park, New Jersey
(973) 520-2567
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| COMMUNITY SURGICAL SUPPLY OF TOMS RIVER, INC., JERROLD FRIED, MICHAEL FRIED, HOWARD FRIED, LINDA LIBASSI, LAURA CRONIN, and MELISSA HAITHCOCK,<br><br>Plaintiffs,<br><br>v.<br><br>MEDLINE DIAMED, LLC, and SCOTT WAKSER,<br><br>Defendants. | Civil Action No.:<br><br>**COMPLAINT** |

Now comes Plaintiffs Community Surgical Supply of Toms River, Inc. ("CSS"), Jerrold Fried, Michael Fried, Howard Fried, Linda LiBassi, Laura Cronin and Melissa Haithcock (collectively, "Plaintiffs"), and for their Complaint against Defendants Medline DiaMed, LLC ("Medline DiaMed") and Scott Wakser (collectively, "Defendants"), hereby states as follows:

**INTRODUCTION**

1. On December 20, 2010, Defendant Medline DiaMed instituted an action in the Court of Common Pleas, Stark County, Ohio (the "TRO Action"), and were granted an *ex parte* Temporary Restraining Order (the "TRO") against Plaintiffs, its former business partners and former employees. The TRO provided, among other things, that Plaintiffs were prohibited from "[s]oliciting or in any way engaging in contact with any Customer and/or Prospective Customer

EAST\44047881.1

of Medline DiaMed, LLC." A list of these alleged "Customer[s] and/or Prospective Customer[s]" was not attached and was not provided when requested. Thus, the effect of this overly broad provision in the TRO was that Plaintiffs could not contact *any* of their Customers for *any* type of product for fear that the Customer might be covered by the TRO. The Verified Complaint, signed by Scott Wakser, and subsequent Declaration of Scott Wakser filed in support of the TRO Action were filled with lies, inaccuracies, and misstatements of fact to convince the judge to grant the TRO.

2. The purpose of the TRO was to prevent Plaintiffs from engaging in business that would compete with Medline DiaMed, despite the fact that none of the Plaintiffs ever signed, agreed to, or are otherwise subject to a non-competition agreement.

3. Perhaps recognizing the futility of the TRO Action, not to mention that Defendant Wakser's Declarations contained demonstrably false statements and attached documents that were improperly obtained as a result of computer hacking, Defendant Medline DiaMed dismissed its action against Plaintiffs on January 12, 2010.

## THE PARTIES

4. Plaintiff Community Surgical Supply of Toms River, Inc. is incorporated in the State of New Jersey with its principal place of business in Toms River, New Jersey.

5. Plaintiff Jerrold Fried is a resident of the State of New Jersey, residing in Toms River, New Jersey. Along with his brothers Michael Fried and Howard Fried, Jerrold Fried owns CSS and is currently the President of CSS.

6. Plaintiff Michael Fried is a resident of the State of New Jersey, residing in Wall, New Jersey. Along with his brothers Jerrold Fried and Howard Fried, Michael Fried owns CSS and is currently the Chief Executive Officer of CSS.

7. Plaintiff Howard Fried is a resident of the State of New Jersey, residing in Bayville, New Jersey. Along with his brothers Michael Fried and Jerrold Fried, Howard Fried owns CSS and is currently a Vice-President of CSS.

8. Plaintiff Linda LiBassi is a resident of the State of New Jersey, residing in Bayville, New Jersey.

9. Plaintiff Laura Cronin is a resident of the State of New Jesrey, residing in Lanoka Harbor, New Jersey.

10. Plaintiff Melissa Haithcock is a resident of the State of New Jersey, residing in Howell, New Jersey.

11. Defendant Medline DiaMed is an Illinois limited liability company with its principal place of business at 3670 Progress Street, Canton, Ohio 44705. Medline DiaMed distributes its office-based physician products nationwide, and has distribution centers in Ohio, Tennessee, and New Jersey.

12. Upon information and belief, Defendant Scott Wakser is a resident of the State of Ohio, residing at 2909 Carrington St NW, North Canton, OH 44720. In his capacity as President of Medline DiaMed, Mr. Wakser regularly conducts business in New Jersey, travels to New Jersey, and communicates with customers located in New Jersey.

## JURISDICTION

13. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) in that the action arises between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interests and costs.

3

14. Venue for this action is properly in this Court pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

## FACTUAL BACKGROUND

### *Relationship of the Parties*

15. Community Surgical Supply of Toms River, Inc. ("CSS") is a regional Oxygen, Respiratory and Home Medical Equipment Company owned by brothers Michael Fried, Jerrold Fried and Howard Fried.

16. In January 2008, DiaMed USA, LLC ("DiaMed USA") was created as a joint-venture between DiaMed, Inc. ("DiaMed") and CSS. DiaMed USA was in the business of selling physician supplies to medical providers.

17. Because of the nature of the business, DiaMed USA targeted many of the physicians with whom CSS had been doing business for years. In fact, CSS introduced DiaMed USA to the physicians in New Jersey with whom CSS had longstanding business relationships.

18. Even after DiaMed USA was created, CSS remained in business, remained in frequent contact with the customers it introduced to DiaMed USA, and continued selling and renting medical supplies as it always had.

19. At the time of the creation of DiaMed USA, CSS already had nearly two decade long relationships with many physicians and hospitals in New Jersey that it introduced to DiaMed USA.

20. Linda LiBassi, Laura Cronin and Melissa Haithcock were employees of CSS prior to the creation of DiaMed USA. Upon the creation of DiaMed USA in January 2008, they began their employment at DiaMed USA.

21. Ms. LiBassi and Ms. Cronin were employed by DiaMed USA as sales representatives. Ms. Haithcock was employed as an accounts payable clerk.

22. In the summer of 2010, the members of DiaMed USA decided to solicit bids to sell DiaMed USA and agreed to sell certain assets of DiaMed USA to Medline under the name of a new company, Medline DiaMed, LLC ("Medline DiaMed").

23. Medline DiaMed acquired the assets of DiaMed USA as of October 28, 2010.

24. Ms. Haithcock resigned from DiaMed USA effective October 28, 2010.

25. Ms. Haithcock began working for CSS, in its accounting department, on October 29, 2010.

26. Ms. Haithcock was never employed in any capacity by either MedLine or the newly formed company, MedLine DiaMed. She also never signed a non-compete agreement of any sort with MedLine, MedLine DiaMed, or DiaMed USA.

27. Ms. Cronin and Ms. LiBassi initially accepted employment with Medline DiaMed after the sale of DiaMed USA.

28. The Asset Purchase Agreement intentionally carved CSS and the Frieds out of the non-competition provision. Thus, CSS and the Frieds are free to engage in whatever business they choose, whether or not it competes with Medline DiaMed.

29. In connection with the sale of DiaMed USA, MedLine DiaMed asked both Ms. Cronin and Ms. LiBassi to sign non-compete agreements shortly after it purchased DiaMed USA. They were told that they could not continue to work for MedLine DiaMed if they did not sign the agreements.

30. They refused to sign the non-compete agreements despite the fact that Mr. Wakser put a lot of pressure on them to sign the non-compete agreement.

31. On December 11, 2010, both Ms. LiBassi and Ms. Cronin tendered their resignation and terminated their employment.

32. Neither Ms. Cronin or Ms. LiBassi ever signed a non-competition agreement with Medline DiaMed.

33. Ms. Cronin and Ms. LiBassi began working for CSS on December 30, 2010.

34. Pursuant to their employment agreements with Medline DiaMed, Ms. Cronin and Ms. LiBassi are to be reimbursed for business expenses and paid commissions in connection with sales they make on behalf of Medline DiaMed.

35. The termination of the employment of Ms. Cronin and Ms. LiBassi did not terminate Medline DiaMed's obligation to reimburse their business expenses and pay them for sales made on behalf of Medline DiaMed prior to their termination.

36. To date, Medline DiaMed owes both Ms. Cronin and Ms. LiBassi money from business expenses and orders they placed on behalf of Medline DiaMed prior to their termination.

37. On December 16, 2010, counsel for Ms. Cronin requested an accounting of all commissions that she is owed.

38. Medline DiaMed refused to provide Ms. Cronin with such an accounting or to pay her the amounts owed.

39. Upon information and belief, in December 2010, employees and agents of Medline DiaMed contacted current and potential customers of CSS and made negative statements about CSS.

40. Upon information and belief, in December 2010, employees and agents of Medline DiaMed contacted current and potential customers of CSS and told them not to place orders with CSS.

41. Medline DiaMed's negative comments to current and potential customers has damaged CSS and seriously impeded CSS's right to conduct its business in the manner it chooses.

### *The TRO Action*

42. On December 20, 2010, Defendant Medline DiaMed instituted the TRO Action, alleging that Plaintiffs were misappropriating its trade secrets, among other claims, and an *ex parte* TRO was entered against Plaintiffs. A true and correct copy of the TRO is attached as Exhibit A.

43. The Verified Complaint, signed by Scott Wakser, and subsequent Declaration of Scott Wakser filed in support of the TRO Action were filled with lies, inaccuracies, and misstatements of fact in order to induce the judge to grant the TRO. True and correct copies of the Verified Complaint and the Declaration of Scott Wakser are attached as Exhibits B and C, respectively.

44. The TRO provided, among other things, that Plaintiffs were prohibited from "[s]oliciting or in any way engaging in contact with any Customer and/or Prospective Customer of Medline DiaMed, LLC." A list of these alleged "Customer[s] and/or Prospective Customer[s]" was not attached and was not provided when requested.

45. The effect of this overly broad provision in the TRO was that Plaintiffs could not contact *any* of their Customers for *any* type of product for fear that the Customer might be covered by the TRO.

46. On December 23, 2010, Plaintiffs removed the case to the United States District Court for the Northern District of Ohio, No. 5:10-cv-02906, before Judge Sara Lioi.

47. On December 27, 2010, Plaintiffs filed an Urgent Motion to Dissolve the TRO and to request an emergency hearing.

48. On one or more occasions, upon information and belief, during the pendency of the TRO Action, the employees and/or agents of Medline DiaMed improperly accessed one or more of Defendants' computers without authorization.

49. For example, on December 28, 2010, well after her termination with Medline DiaMed, Ms. Cronin's personal computer was accessed without her authorization by someone at an IP address belonging to DiaMed. Upon information and belief, this unauthorized action was either taken by Scott Wakser or done at his direction.

50. The files accessed as a result of this intrusion were attached to the December 28, 2010 Declaration of Scott Wakser filed in this action.

51. The TRO remained in full effect until December 29, 2010, when a hearing was held before Judge Lioi. The parties agreed to limit the scope of the TRO so that just Ms. LiBassi and Ms. Cronin were prohibited from contacting four specific customers. In other words, all of the other Plaintiffs were permitted to contact any customers for any business purpose, regardless of whether they were engaging in competition with Medline DiaMed. A true and correct copy of the Stipulated Temporary Restraining Order is attached as Exhibit D.

52. On January 12, 2011, after the parties had exchanged discovery, Defendant Medline DiaMed dismissed the TRO Action without prejudice.

53. Medline DiaMed's actions with respect to Defendants have been taken in a bad faith and malicious effort to impose a non-compete agreement upon Defendants.

54. As a direct and proximate cause of the TRO, Plaintiffs lost potential sales and customers, in addition to the fact that Plaintiffs were forced to incur tens of thousands of dollars in attorneys' fees.

55. Medline DiaMed should be required to compensate Plaintiffs for the costs and losses incurred as a result of Defendants' extortion campaign to receive a better deal than the one to which it legally contracted.

## COUNT I – MALICIOUS USE OF PROCESS

56. Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 55 of the Complaint as if set forth at length herein.

57. On December 20, 2010, Defendant Medline DiaMed instituted the "TRO Action, and were granted an *ex parte* TRO against Plaintiffs.

58. The TRO provided, among other things, that Plaintiffs were prohibited from "[s]oliciting or in any way engaging in contact with any Customer and/or Prospective Customer of Medline DiaMed, LLC." A list of these alleged "Customer[s] and/or Prospective Customer[s]" was not attached and was not provided when requested. Thus, the effect of this overly broad provision in the TRO was that Plaintiffs could not contact *any* of their Customers for *any* type of product for fear that the Customer might be covered by the TRO.

59. The Verified Complaint, signed by Scott Wakser, and accompanying Declarations of Scott Wakser filed in support of the TRO Action were filled with lies, inaccuracies, and misstatements of fact.

60. The filing of the TRO Action was motivated by malice.

61. There was no probable cause or reasonable basis to prosecute the TRO Action. Specifically, there were no non-competition agreements between the parties to restrict Plaintiffs' ability to engage in business.

62. The TRO Action was dismissed by Defendant Medline DiaMed on January 12, 2011.

63. Plaintiffs suffered a special grievance caused by the institution of the TRO action. Specifically, Plaintiffs CSS, Michael Fried, Jerrold Fried and Howard Fried lost profits, potential customers, and business opportunities during the pendency of the TRO. Similarly, Plaintiffs Linda LiBassi, Laura Cronin and Melissa Haithcock lost income, potential customers, and the ability to earn their living during the pendency of the TRO.

64. Plaintiffs suffered damages as a result of the institution of the TRO Action in an amount to be proven at trial.

WHEREFORE, Plaintiffs Community Surgical Supply of Toms River, Inc., Jerrold Fried, Michael Fried, Howard Fried, Linda LiBassi, Laura Cronin and Melissa Haithcock demand judgment against Defendants Medline DiaMed, LLC and Scott Wakser as follows:

    A. Compensatory damages;

    B. Consequential damages;

    C. Punitive damages in an amount to be determined at trial;

    D. Attorneys' fees in an amount to be determined by the Court;

    E. Prejudgment and post judgment interest;

    F. Costs; and

    G. Any further relief that this Court deems just and equitable.

## COUNT II – INVASION OF PRIVACY

65. Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 64 of the Complaint as if set forth at length herein.

66. On at least one occasion, on December 28, 2010, someone acting on behalf of Defendant Medline DiaMed accessed Ms. Cronin's personal computer and intruded into her personal files without her authorization or knowledge.

67. Upon information and belief, the intrusion was either undertaken by Scott Wakser or done at his direction.

68. Files obtained as a result of this intrusion were attached as Exhibits to the December 28, 2010 Declaration of Scott Wakser.

69. The intrusion into Ms. Cronin's personal computer and files was intentional and without Ms. Cronin's authorization.

70. The interference with Ms. Cronin's was substantial and highly offensive.

71. Ms. Cronin has a reasonable expectation of privacy in the content of her personal computer and, especially after her employment with Medline DiaMed terminated on December 11, 2010, Plaintiff had no legitimate reason to access her personal files.

72. The invasion of Ms. Cronin's privacy has damaged her in an amount to be proven at trial.

73. Additionally, Plaintiffs request that Defendants and their agents and employees be enjoined from accessing any computers belonging to any Plaintiffs.

WHEREFORE, Plaintiffs Community Surgical Supply of Toms River, Inc., Jerrold Fried, Michael Fried, Howard Fried, Linda LiBassi, Laura Cronin and Melissa Haithcock demand judgment against Defendants Medline DiaMed, LLC and Scott Wakser as follows:

A. Compensatory damages;

B. Consequential damages;

C. Punitive damages in an amount to be determined at trial;

D. Attorneys' fees in an amount to be determined by the Court;

E. Prejudgment and post judgment interest;

F. Costs; and

G. Any further relief that this Court deems just and equitable.

**COUNT III – BREACH OF CONTRACT – UNPAID COMMISSIONS AND EXPENSES**

74. Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 73 of the Complaint as if set forth at length herein.

75. On December 11, 2010, Laura Cronin and Linda LiBassi terminated their employment with Defendant Medline DiaMed.

76. Ms. Cronin and Ms. LiBassi have duly performed under and complied with all applicable obligations under their employment agreements with Defendant Medline DiaMed.

77. Defendant Medline DiaMed has not reimbursed expenses and/or paid Ms. Cronin and Ms. LiBassi the salary and/or commission payments owed for sales made prior to their termination date.

78. The failure to reimburse Ms. Cronin and Ms. LiBassi and/or to pay Ms. Cronin and Ms. LiBassi the salary and/or commission payments owed to them constitutes a material breach of the employment agreements.

79. As a direct and proximate result of Defendant Medline DiaMed's material breaches of the employment agreements, Ms. Cronin and Ms. LiBassi incurred damages, in an amount to be proved at trial.

WHEREFORE, Plaintiffs Community Surgical Supply of Toms River, Inc., Jerrold Fried, Michael Fried, Howard Fried, Linda LiBassi, Laura Cronin and Melissa Haithcock demand judgment against Defendants Medline DiaMed, LLC and Scott Wakser as follows:

    A. Compensatory damages;

    B. Consequential damages;

    C. Punitive damages in an amount to be determined at trial;

    D. Attorneys' fees in an amount to be determined by the Court;

    E. Prejudgment and post judgment interest;

    F. Costs; and

    G. Any further relief that this Court deems just and equitable.

## COUNT IV – UNJUST ENRICHMENT

80. Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 79 of the Complaint as if set forth at length herein.

81. At all times, Ms. Cronin and Ms. LiBassi reasonably and justifiably expected to be paid for their work on behalf of Defendant Medline DiaMed.

82. Defendant Medline DiaMed accepted the orders placed by Ms. Cronin and Ms. LiBassi, retained the benefit of their work, and knew that Ms. Cronin and Ms. LiBassi expected to be paid for such work.

83. Defendant Medline DiaMed has not paid Ms. Cronin and Ms. LiBassi all of the commissions owed in connection with orders placed on behalf of Defendant Medline DiaMed.

84. Defendant Medline DiaMed's retention of the benefit of the efforts of Ms. Cronin and Ms. LiBassi without paying for the work is improper and inequitable.

85. By accepting the orders placed by Ms. Cronin and Ms. LiBassi but failing to pay the commissions, Defendant Medline DiaMed has been unjustly enriched at the detriment and expense of Ms. Cronin and Ms. LiBassi.

WHEREFORE, Plaintiffs Community Surgical Supply of Toms River, Inc., Jerrold Fried, Michael Fried, Howard Fried, Linda LiBassi, Laura Cronin and Melissa Haithcock demand judgment against Defendants Medline DiaMed, LLC and Scott Wakser as follows:

    A. Compensatory damages;

    B. Consequential damages;

    C. Punitive damages in an amount to be determined at trial;

    D. Attorneys' fees in an amount to be determined by the Court;

    E. Prejudgment and post judgment interest;

    F. Costs; and

    G. Any further relief that this Court deems just and equitable.

## COUNT V – INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

86. Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 85 of the Counterclaim as if set forth at length herein.

87. In addition to continuing to sell the patient supplies that it always has, in late November/early December 2010, CSS started selling physician supplies that will result in an economic benefit to CSS.

88. Defendants knew of CSS's intention to enter the physician supply business.

89. CSS never agreed, in writing or otherwise, to a non-competition provision with Defendant Medline DiaMed.

90. Thus, no legal reason exists why CSS may not freely pursue the physician supply business.

91. By instituting the TRO Action and by contacting CSS's current and prospective customers and making negative statements about CSS, Defendants Medline DiaMed and Mr. Wakser intended to prevent CSS from entering into the physician supply business, and engaged in wrongful conduct and unfair trade practices.

92. As a direct and proximate result of Defendants' acts of interference, CSS has lost potential sales and potential customers, and CSS has suffered, and will continue to suffer damages. CSS seeks compensation for all damages and losses proximately caused by the acts of interference and wrongful conduct of Defendants in an amount according to proof.

93. Defendants' wrongful acts and conduct as described above were willful, oppressive, fraudulent, and malicious, and CSS is therefore entitled to punitive damages according to proof.

WHEREFORE, Plaintiffs Community Surgical Supply of Toms River, Inc., Jerrold Fried, Michael Fried, Howard Fried, Linda LiBassi, Laura Cronin and Melissa Haithcock demand judgment against Defendants Medline DiaMed, LLC and Scott Wakser as follows:

   A. Compensatory damages;
   B. Consequential damages;
   C. Punitive damages in an amount to be determined at trial;
   D. Attorneys' fees in an amount to be determined by the Court;
   E. Prejudgment and post judgment interest;
   F. Costs; and
   G. Any further relief that this Court deems just and equitable.

## JURY DEMAND

Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable.

Respectfully submitted,

s/ B. John Pendleton, Jr.
B. John Pendleton, Jr.
DLA PIPER LLP (US)
300 Campus Drive, Suite 100
Florham Park, New Jersey  07932
(973) 520-2561
F: (973) 520-2581
john.pendleton@dlapiper.com

Dated:  January 13, 2011